UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
:
JEAN CAMARA,                                          :
                                                      :  **ECF CASE**
                            Plaintiff,                :
                                                      :  Civil Action No. 13-CV-05246
            - against -                               :  (JBW)(LB)
                                                      :
COSTCO WHOLESALE CORPORATION,                         :
                                                      :
                            Defendant.                :
                                                      :
----------------------------------------------------------------x

## STIPULATION OF UNDISPUTED FACTS

It is hereby stipulated and agreed, by and between Plaintiff Jean Camara and Defendant Costco Wholesale Corporation, by and through their respective counsel, that the following facts are undisputed:

1. Costco is a Washington corporation, which operates stores, known as "warehouses," to provide non-food items, food items, and other merchandise and ancillary products to its "members."

2. Costco operates a warehouse in Brooklyn, New York (the "Brooklyn Warehouse").

3. Each Costco warehouse is operated by a General Manager, who oversees all operations at his or her warehouse. Mohamed Zeffouni became the General Manager of the Brooklyn Warehouse in 2009. The General Manager of each warehouse reports to a Regional Vice President for Costco; the Regional Vice President with responsibility over the Brooklyn Warehouse at times pertinent to this action was Yoram Rubanenko.

4. Many of the customers at the Brooklyn Warehouse are also Muslim.

5. The General Manager of each warehouse is supported by between two and four Assistant General Managers, as well as a team of staff level managers. Below the staff level managers are department managers, and below them, area supervisors. At all times pertinent to this action, Tom Anzalone and Steve Deaney were Assistant General Managers at the Brooklyn Warehouse. Ricky Velez, as a Front End Manager, was a staff level manager.

6. Costco maintains a policy governing reports of harassment, discrimination and/or retaliation, and requires employees, or managers with knowledge, to report instances of harassment, discrimination or retaliation so that Costco may conduct an investigation.

7. During Plaintiff's employment with Costco, he received copies of the 2010 Employee Agreement, which was the operative agreement during the time of his employment, including Costco's anti-harassment, anti-discrimination and Open Door policies. Costco's management at the Brooklyn Warehouse likewise received copies of Costco's policies and acknowledged them.

8. Every year, Costco has an "HR Month" which is designed to inform its employees about Costco's policies regarding, among other things, discrimination, harassment, retaliation, and employee complaints. All employees at the warehouse, up to and including the General Manager, are required to attend HR Month.

9. Plaintiff is African and Muslim.

10. Plaintiff submitted a job application to Costco on August 28, 2012. In that application, Plaintiff indicated that he was applying for "any position" that was available.

11. Costco interviewed Plaintiff for a position.

2

12. Plaintiff had his first and second interviews on September 19, 2012. Tom Anzalone interviewed him, and an employee named Adelina Jones was also present during the interviews.

13. During the interview process, Tom Anzalone knew that Plaintiff was Muslim. Following the first and second interviews, Tom Anzalone recommended Plaintiff for a final interview.

14. Steve Deaney conducted Plaintiff's final interview. During the interview process, Steve Deaney was aware that Plaintiff was Muslim. Following this final interview, Steve Deaney made the decision to hire Plaintiff. Costco hired Plaintiff as a part-time Cashier Assistant.

15. During the interview process, Plaintiff told Costco that he had a religious restriction and he could not work before 4:00 PM on Fridays because of his religious commitments. Accordingly, throughout his employment, Costco did not require Plaintiff to work on Fridays.

16. On or about September 26, 2012, Plaintiff began his employment at Costco's Brooklyn Warehouse as a part-time Cashier Assistant, also known as a Front End Assistant, which is a position in the Front End department.

17. For the first ninety days (90) of Plaintiff's employment, Costco considered him, just like every other newly hired employee, to be a probationary employee. During the probationary period, Costco evaluates the employee's performance to determine whether the employee exhibits certain performance criteria, such as work ethic and reliability, and whether the employee should stay with Costco or not beyond the first ninety 90 days of employment.

3

18. In or around October 2012, Plaintiff had a disagreement with a Cashier because Plaintiff refused to pick up a box containing alcohol that was in a member's cart. As a Cashier Assistant, Plaintiff was required to take products out of a member's cart and put them on to the conveyer belt so the Cashier could scan them. In this instance, the member had a box of alcohol in his or her cart, and Plaintiff asked the Cashier if she could handle the product, rather than Plaintiff handling it. The Cashier refused to pick up the box of alcohol for Plaintiff.

19. Shortly after this incident with the Cashier, a member of Costco's managerial staff transferred Plaintiff to a different position on the Lot Crew, which involved working in the warehouse's parking lot. Costco intended this move to the parking lot to be an accommodation. Plaintiff's pay rate remained the same.

20. Plaintiff complained about the accommodation he had received.

21. Plaintiff received 30-day, 60-day, and 90-day written performance reviews during the probationary period of his employment, as is typical for probationary employees. Costco managers recommended that Plaintiff pass the probationary period, after which point Plaintiff was no longer a probationary employee.

22. On the evening of January 15, 2013, Plaintiff approached Mohamed Zeffouni in the parking lot to complain about perceived discrimination, as Mr. Zeffouni was leaving the building to go home. The next day, Mr. Zeffouni asked Steve Deaney to investigate Plaintiff's allegations.

23. In connection with Steve Deaney's investigation of Plaintiff's complaint, Plaintiff submitted at least one written statement. Steve Deaney also interviewed and obtained statements from several other Costco employees, including Carmen Cruz, Eduardo Husband, Vianka Nieves, Ricky Velez, and Tom Anzalone.

24. Mr. Deaney sent an investigation summary to Mr. Zeffouni.

25. On or about November 30, 2012, Costco posted a job opening for the position of Forklift Driver in the employee break room, and Plaintiff signed the posting to indicate his interest in being considered for the position.

26. On or about January 29, 2013, Plaintiff submitted a letter of interest in the position of Front End Supervisor, and Ricky Velez interviewed Plaintiff for the position. Costco selected Amanda Umbria for the Front End Supervisor position.

27. On February 4, 2013, Plaintiff filed his New York State Division of Human Rights Complaint.

28. On or about February 20, 2013 at approximately 8:30 or 9:00 P.M., during Plaintiff's shift, Plaintiff complained about being cold, and Ricky Velez directed Plaintiff to finish his work in the parking lot. A dispute ensued.

29. Velez reported the incident to management. The day after Plaintiff's disagreement with Mr. Velez, Mr. Zeffouni spoke with Plaintiff about the incident; Plaintiff said a number of things, including, "Why do you want me to go outside? . . . I told you already there was a lot of [INDISCERNIBLE] and it was cold. That's why I saw [sic] I'm not gonna do it because I'm not gonna set [sic] myself out there when you guys [sic] inside here." Mr. Zeffouni gave Plaintiff an Employee Counseling Notice and suspended Plaintiff for insubordination pending review.

30. At Mohamed Zeffouni's request, Plaintiff prepared a written statement regarding the incident with Mr. Velez. Ricky Velez, Nixon Conserve and Luis Lopez also prepared written statements regarding the incident.

5

31. Costco terminated Plaintiff's employment on February 25, 2013 for serious misconduct and insubordination. Serious misconduct and insubordination are listed as causes for termination under Sections 11.3(10) and 11.3(19) of the Costco Employee Agreement, which prohibit "[s]erious misconduct of any kind as defined by the Company" and "[i]nsubordinate conduct including, but not limited to . . . [r]efusal to comply with the direct instructions or directions of your Supervisor," respectively. Mohamed Zeffouni, in consultation with Yoram Rubanenko, made the decision to terminate Plaintiff's employment; and directed Steve Deaney to communicate the decision to Plaintiff.

HENRY LAW GROUP

By: _____
Chauncey D. Henry
825 E. Gate Blvd., Suite 106
Garden City, NY 11530
Tel.: (516) 366-4367
Fax: (516) 688-3955
Chauncey.Henry@lawhenry.com

*Attorneys for Plaintiff*
*Jean Camara*

DATED: February 9, 2015

SEYFARTH SHAW LLP

By: _____
Lynn A. Kappelman
Lorie E. Almon
Cameron Smith
620 Eighth Avenue, 32nd Floor
New York, NY 10018-1405
Tel.: (212) 218-5500
Fax: (212) 218-5526
lkappelman@seyfarth.com
lalmon@seyfarth.com
casmith@seyfarth.com

*Attorneys for Defendant*
*Costco Wholesale Corporation*

DATED: February 9, 2015